IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BLANCA ROSALES,<br><br>　　　　　Defendant.<br>_____ | Case No. CR-04-243-E-BLW<br><br>MEMORANDUM DECISION<br>AND ORDER |

The Court has before it Defendant Blanca Rosales' Motion to Suppress Evidence (Docket No. 361) and Defendant Blanca Rosales' Motion in Limine Re: Governments Use of Expert Witnesses (Docket No. 362).[1]

## INTRODUCTION

On January 6, 2005, the Court held a suppression hearing on Defendant's Motion to Suppress Evidence. At the end of the hearing, the Court asked the parties to submit any further written briefs they wished to file in support of or opposition to the motion. The Court has now received all briefs, and issues the

---

[1] The parties informed the Court that they have reached an agreement regarding Defendant's Motion in Limine Re: Governments Use of Expert Witnesses. Therefore the Court will deem the motion moot.

**Order -- page 1**

following decision.

## BACKGROUND

On October 25, 2004, Special Agent Michael Reeves of U.S. Immigration and Customs Enforcement ("ICE") received information through wire taps that illegal drugs were being transported from Utah to Idaho. The wire taps revealed that the delivery vehicle would first stop at a residence in Idaho Falls, Idaho, then proceed to another location. Officers then observed a maroon Jeep go to the first location and follow another vehicle to a second location.

After the Jeep left the second location, officers stopped the vehicle. Two male occupants in the vehicle identified themselves as Alfredo Rosales and Salvador Gomez. However, the vehicle was registered to Blanca Rosales and Jose Luis-Chavez. Through ICE files and a photograph, Special Agent Reeves later determined that the description of the individual who identified himself as Salvador Gomez matched the description of Jose Luis-Chavez. It was also determined that Jose Luis-Chavez was in the United States illegally. Subsequent wire taps (a few hours after officers observed the maroon Jeep) revealed code language confirming the amount of drugs and money delivered by the occupants of the maroon Jeep.

Officers continued monitoring telephone calls through wire taps. Based on a

**Order -- page 2**

telephone number and similarity in voice, officers believed they were monitoring calls from the same individual they had monitored on October 25, 2004. Officers believed the individual was the source of the drugs coming to Idaho from Utah. At one point, the source indicated that he would be transporting more illegal drugs from Utah to Idaho on Sunday, November 7, 2004.

On the morning of November 7, 2004, a group of law enforcement officers assembled. The officers agreed to conduct surveillance on a stretch of Interstate 15 from Utah to Idaho. Later that morning, Agent Reeves, who was sitting in an unmarked police vehicle on the side of the interstate, observed the maroon Jeep heading north on I-15. Agent Reeves observed Jose Luis-Chavez as the driver of the vehicle.

Another officer involved in the briefing that morning, Idaho State Police Detective John Kempf, also observed the maroon Jeep heading north on I-15 on November 7, 2004. Armed with a description of the maroon Jeep and license plate number, Detective Kempf spotted the vehicle. Detective Kempf, driving an unmarked silver 2000 Chevy Monte Carlo, entered the freeway, caught up with the maroon Jeep, and followed it for a short distance.

Detective Kempt estimated the speed of the Jeep to be less than the posted speed limit of 75 miles per hour. Detective Kempf wanted to stop the vehicle, so

**Order -- page 3**

he proceeded to pass it, looking for what he called administrative reasons to make a traffic stop, such as tinted windows or a license plate sticker in the wrong place. Not finding any administrative reasons to stop the vehicle, Detective Kempf put some distance between his vehicle and the Jeep, about five car lengths, and pulled in front of the Jeep. Detective Kempt then broadcast to the other officers that he had found no administrative reasons to stop the Jeep.

The Jeep eventually closed the gap between the two cars to approximately two car lengths. At that point, Idaho State Trooper Mike Winans, who was parked in the median between the north and south bound lanes of I-15, observed the two vehicles heading north. Trooper Winans had been given a description of the maroon Jeep and instructions to stop it if he found probable cause to do so.

Trooper Winans estimated the speed of the Jeep to be approximately 70-72 miles per hour. He later confirmed that speed through his radar. Trooper Winans also estimated that the Jeep was following the Monte Carlo at a distance of about two car lengths. He believed that to be a traffic violation, but wanted to give the Jeep time to increase the distance, so he did not immediately pull it over. Instead, he followed the Jeep at a distance of about 150 yards for approximately one minute. The Jeep failed to increase the distance between it and the Monte Carlo, so Trooper Winans pulled it over.

**Order -- page 4**

## ANALYSIS

Blanca Rosales, the passenger in the maroon Jeep, moves the Court to suppress all evidence obtained subsequent to the stop. Rosales claims that officers lacked probable cause to stop the vehicle.

The decision to make a traffic stop is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See U.S. v. Chavez-Valenzuela*, 268 F.3d 719, 723 (9th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996). In determining whether a stop was proper, the Court looks to the events preceding the stop, then examines whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. *See Chavez-Valenzuela*, 268 F.3d at 723. Pursuant to Idaho Code § 49-638, a vehicle may not follow another vehicle closer than is reasonable and prudent having due regard for the speed of the vehicle, the traffic upon and the condition of the highway.

Trooper Winans testified that at the time of the stop, the maroon Jeep was traveling at approximately 70-72 miles per hour. He also estimated that the Jeep was following the Monte Carlo at a distance of about two car lengths for approximately 1-2 minutes. He also testified that road conditions were clear and dry. There is some discrepancy about the flow of traffic, however. Trooper

Winans testified that traffic flow was heavy, while Detective Kempf testified that traffic flow was light to medium. Based on observation of the limited video from Trooper Winans' car that day (Exhibit A), the Court is more inclined to agree with Detective Kempf's description of traffic flow as light to medium.

Trooper Winans further testified that his typical rule of thumb for a reasonable and prudent following distance is one car length per every 10 miles per hour. At 70-72 miles per hour, Trooper Winans believes two car lengths is not a reasonable and prudent following distance.

Under these circumstances, the Court finds that Trooper Winans had probable cause to believe a traffic violation had occurred. Even with clear and dry road conditions, and even with light traffic flow, an objectively reasonable police officer would determine that a vehicle traveling at speeds of 70-72 miles per hour, following another vehicle at a distance of two car lengths for approximately 1-2 minutes, is in violation of I.C. § 49-638. Accordingly, the Court will deny the motion to suppress.[2]

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Blanca

---

[2] The Government also asserts that Trooper Winans had probable cause to stop the vehicle based on the collective knowledge doctrine. Given the Court's determination that Trooper Winans had probable cause to stop the vehicle based on a traffic violation, the Court need not address the collective knowledge doctrine.

**Order -- page 6**

Rosales' Motion to Suppress Evidence (Docket No. 361) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant Blanca Rosales' Motion in Limine Re: Governments Use of Expert Witnesses (Docket No. 362) shall be, and the same is hereby, DEEMED MOOT.

DATED: **January 12, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Order -- page 7**